Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail:        mark@markmerin.com
               paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF NORMAN FISHER JR.,
S.F., and CATHERINE DALLAS FISHER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| ESTATE OF NORMAN FISHER JR., S.F., and CATHERINE DALLAS FISHER,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

47-year-old NORMAN FISHER JR. was denied necessary medical treatment by jail staff as a pretrial detainee at the Sacramento County Main Jail in custody of the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, resulting in his death on May 27, 2023.

## JURISDICTION & VENUE

1.     This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to

1

address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has jurisdiction of the state claims under 28 U.S.C. § 1367.

2. Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3. Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Sacramento, California.

**EXHAUSTION**

4. On August 31, 2023, the ESTATE OF NORMAN FISHER JR., S.F., and CATHERINE DALLAS FISHER submitted a government claim to the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT relating to the claims asserted in this action. (Claim No. L2301021.)

5. On October 11, 2023, the COUNTY OF SACRAMENTO issued a notice of rejection of claim.

6. By October 16, 2023, the SACRAMENTO COUNTY SHERIFF'S DEPARTMENT failed or refused to act on the claim.

**PARTIES**

7. Plaintiff ESTATE OF NORMAN FISHER JR. appears by and through real-party-in-interest Plaintiff S.F., the biological child of NORMAN FISHER JR., who brings this action pursuant to California Code of Civil Procedure § 377.30. Plaintiff S.F. brings this action as the successor-in-interest on behalf of NORMAN FISHER JR. Plaintiff S.F.'s declaration regarding status as successor-in-interest is attached, pursuant to California Code of Civil Procedure § 377.32.

8. Plaintiff S.F. is a resident of the State of Illinois, County of Winnebago. Plaintiff S.F. is the biological daughter of NORMAN FISHER JR. Plaintiff S.F. brings this action in a representative capacity, as successor-in-interest on behalf of NORMAN FISHER JR.; and in an individual capacity, on behalf of herself.

9. Plaintiff CATHERINE DALLAS FISHER is a resident of the State of Arkansas, County

2

of Baxter. Plaintiff CATHERINE DALLAS FISHER is the biological mother of NORMAN FISHER JR. Plaintiff CATHERINE DALLAS FISHER brings this action in an individual capacity, on behalf of herself.

10.     Defendant COUNTY OF SACRAMENTO is located in the State of California. Defendant COUNTY OF SACRAMENTO is a "public entity," pursuant to California Government Code § 811.2.

11.     Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT located in the State of California, COUNTY OF SACRAMENTO. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is a "public entity," pursuant to California Government Code § 811.2.

12.     Defendant JIM COOPER is and was, at all times material herein, a law enforcement officer and Sheriff for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JIM COOPER is sued in an individual capacity.

13.     Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. is and was, at all times material herein, a Maryland corporation licensed to do business in California, with their corporate headquarters located in Columbia, Maryland.

14.     Defendant SHALETHA HARRIS is and was, at all times material herein, employed by Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., and contracted by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant SHALETHA HARRIS is sued in an individual capacity.

15.     Defendant SUVAG PATNAIK is and was, at all times material herein, employed by Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., and contracted by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant SUVAG PATNAIK is sued in an individual capacity.

16.     Defendant DEOJANNA ORNIDO is and was, at all times material herein, employed by Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., and contracted by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant DEOJANNA ORNIDO is sued in an individual capacity.

17.     Defendant JACQUELINE CASTEX is and was, at all times material herein, employed by Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., and contracted by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JACQUELINE CASTEX is sued in an individual capacity.

18.     Defendant NILOOFAR FADAKI is and was, at all times material herein, employed by Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., and contracted by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant NILOOFAR FADAKI is sued in an individual capacity.

19.     Defendants DOE 1 to 20 are and/or were agents or employees of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and/or Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., acting within the scope of agency or employment and under color of state law. Defendants DOE 1 to 20 are sued by their fictitious names and their true and correct names and identities will be substituted when ascertained.

## GENERAL ALLEGATIONS

20.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

21.     On February 19, 2023, NORMAN FISHER JR. was booked into the custody of

4

Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT at the Sacramento County Main Jail, 651 I Street, Sacramento, CA 95814.

22.     NORMAN FISHER JR. was booked into custody as a pre-trial detainee.

23.     NORMAN FISHER JR. was housed at the jail on 4 East, 300 pod.

24.     In May 2023, NORMAN FISHER JR. became ill, including experiencing difficulty breathing, eating, and moving about. He was nauseous and would vomit when he ate food.

25.     Around May 17, 2023, NORMAN FISHER JR. told his cellmate, Jacob Smith, that he was not well. He could barely sit up in his bed and, when he did so, he would vomit.

26.     NORMAN FISHER JR. continued to vomit for several days and he was unable to eat or drink.

27.     Jacob Smith alerted a custody staff member and explained that NORMAN FISHER JR. was vomiting non-stop and needed immediate medical attention.

28.     The custody staff member responded to Jacob Smith by telling him that, if NORMAN FISHER JR. needed medical attention, he was required to prepare and submit a medical form requesting services.

29.     NORMAN FISHER JR. was too ill to write-down his medical issues on a medical form. Jacob Smith assisted NORMAN FISHER JR. by preparing and submitting a medical form on NORMAN FISHER JR.'s behalf.

30.     No response to NORMAN FISHER JR.'s medical form was provided.

31.     NORMAN FISHER JR.'s condition continued to deteriorate over the course of several days. He was too weak to stand up from his bed to use the toilet, and when he attempted to do so he would fall to the ground and vomit.

32.     NORMAN FISHER JR. and Jacob Smith began pressing the emergency intercom button inside of their cell and requesting immediate medical attention for NORMAN FISHER JR.

33.     Custody staff, including Defendants DOE 1 to 10, responded by reprimanding NORMAN FISHER JR. and Jacob Smith for pushing the button and told them that the button was to be used "only for emergencies" but NORMAN FISHER JR.'s illness did not qualify.

34.     No response to NORMAN FISHER JR.'s request for medical attention was provided.

35.     Around May 19, 2023, Jacob Smith requested that an inmate trustee, Joseph Jay, alert deputies in the control booth that NORMAN FISHER JR.'s required immediate medical attention. Jacob Smith required Joseph Jay's assistance because Defendants DOE 1 to 10 had been ignoring requests for medical attention when the emergency intercom button was pressed.

36.     Joseph Jay alerted deputies in the control booth to NORMAN FISHER JR.'s immediate need for medical attention.

37.     No response to Joseph Jay's request for medical attention on behalf of NORMAN FISHER JR. was provided.

38.     On May 20, 2023, NORMAN FISHER JR. was summoned to the jail's medical department for a sick call visit with a physician.

39.     NORMAN FISHER JR. was too sick and weak to walk from his cell to the elevator.

40.     Jacob Smith and Joseph Jay helped NORMAN FISHER JR. to reach a wheelchair, and wheeled him to the elevator.

41.     NORMAN FISHER JR. was briefly evaluated by Defendant SHALETHA HARRIS, a registered nurse, and Defendant SUVAG PATNAIK, a doctor of medicine.

42.     On information and belief, Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. were directly responsible for staffing, training, supervision, and certain policies and customs at the jail. Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. provided licensed, qualified physicians and nurses on a contract basis to Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities, and employed or was responsible for medical staff at the jail, including Defendants SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 11 to 20.

43.     Defendant SHALETHA HARRIS documented that NORMAN FISHER JR. reported "Very Severe Pain" at a pain-level of "7."

44.     Defendant SUVAG PATNAIK documented that NORMAN FISHER JR. reported a high fever, headaches, chills, soreness, and nasal congestion.

6

45.     Defendant SUVAG PATNAIK diagnosed NORMAN FISHER JR. with flu-like symptoms and instructed him to rest, drink fluids, and to let the illness "run its course."

46.     NORMAN FISHER JR. was returned to his cell from medical.

47.     NORMAN FISHER JR. was suffering from symptoms of sepsis, which could have been detected by performing a blood test.

48.     Defendants SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 11 to 20 could have but failed timely to order or perform a blood test on NORMAN FISHER JR.

49.     Later that day, Defendant SHALETHA HARRIS reported that NORMAN FISHER JR. "came back down to medical reporting vomit[ing]," "appears ill," and was put on a "[p]lan to monitor [] for 24 hours for worsening symptoms or change in[ ]condition."

50.     NORMAN FISHER JR.'s condition continued to deteriorate and he was visibly ill, bloated, pale, and had blue lips.

51.     On May 21, 2023, NORMAN FISHER JR. and Jacob Smith again pressed the emergency intercom button and requested medical attention for NORMAN FISHER JR.

52.     Defendant DEOJANNA ORNIDO, a registered nurse, received a call from custody staff about NORMAN FISHER JR.'s request for medical attention.

53.     Defendant DEOJANNA ORNIDO reviewed NORMAN FISHER JR.'s medical chart but took no further action.

54.     Later, on May 21, 2023, Defendant JACQUELINE CASTEX, a medical assistant, falsely documented that NORMAN FISHER JR. "refused" a blood pressure check when he "did not come out" of his cell. In fact, NORMAN FISHER JR. was so ill that he was unable to leave his cell. Defendant JACQUELINE CASTEX failed to discern why NORMAN FISHER JR. could not leave his cell.

55.     NORMAN FISHER JR.'s condition continued to deteriorate; he had not eaten for several days but he vomited stomach bile non-stop and was losing weight at a rapid pace; he could barely sit-up on his own and was crying because he was so sick; and he was mentally confused and called his cellmate, Jacob Smith, by different names other than his own.

56.     During this time, Jacob Smith and Joseph Jay repeatedly requested medical attention on

7

NORMAN FISHER JR.'s behalf, including repeatedly requesting that custody staff, including Defendants DOE 1 to 10, contact medical, every day, at least twice-a-day, during both morning and night shifts. In response, Defendants DOE 1 to 10 provided the same response that there was "no response" from medical.

57.     In the evening, NORMAN FISHER JR. instructed Jacob Smith to press the emergency intercom button and call for staff on his behalf because he could no longer attempt to let his illness "run its course," as he had been instructed by medical staff.

58.     Defendant DOE 1, a female custody staff member, responded over the intercom.

59.     NORMAN FISHER JR. told the female custody staff member that he was ill, required immediate medical attention, and was going "man down." The female custody staff member responded that "man down" was only a "prison term" (as opposed to a term used in jail) and there was no going "man down" on her shift. NORMAN FISHER JR. told the female custody staff member that the nurse had instructed him to call an officer if his condition worsened and that it had. In response, the female custody staff member told NORMAN FISHER JR. to wait. The female custody staff member returned on the intercom and told NORMAN FISHER JR. that she had called medical staff, which had informed her that "they already know you're sick and you just have to deal with it." NORMAN FISHER JR. responded that he needed to be taken to the hospital as soon as possible. The female custody staff member responded that it would have to wait until the morning because she would not arrange for it during her shift.

60.     In the morning, on May 22, 2023, Jacob Smith asked the porters to contact custody staff because NORMAN FISHER JR. could not get up and needed immediate medical attention.

61.     Custody staff members responded to the cell.

62.     Jacob Smith told the responding custody staff members that he refused to lock-down his cell until NORMAN FISHER JR. received medical attention.

63.     Thereafter, NORMAN FISHER JR. was summoned to the jail's medical department for a sick call visit with a physician.

64.     NORMAN FISHER JR. was too sick and weak to walk from his cell to the elevator.

65.     NORMAN FISHER JR. was assisted by others to reach the elevator and attend the

examination.

66.     Defendant NILOOFAR FADAKI, a doctor of medicine, documented that NORMAN FISHER JR. "looks ill" and "has [a] fever," and that NORMAN FISHER JR. reported that he had a fever, headaches, chills, soreness, and nasal congestion for several days, that he was "dizzy," had fallen down, and required other inmates' assistance to travel, and that he had not eaten for several days.

67.     Defendants SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20 failed adequately and timely to observe, summon care, diagnose, and/or treat NORMAN FISHER JR.'s medical emergency but could have done so, including by responding to his complaints and obvious medical conditions or by transferring him to an outside medical facility that could adequately and timely diagnose and provide treatment.

68.     NORMAN FISHER JR.'s housing assignment was changed and he was placed in the "M1" medical department for observation.

69.     On May 23, 2023, Ehab Tuppo, a doctor of osteopathic medicine, documented that NORMAN FISHER JR.'s "condition has declined," he "seemed lethargic in his speech," and that he would be sent "to the [emergency department] for evaluation and treatment."

70.     Later, NORMAN FISHER JR. was transferred to Sutter Medical Center based on a "cardiac" incident.

71.     NORMAN FISHER JR. was put on life-support at the hospital.

72.     On May 27, 2023, NORMAN FISHER JR. died.

73.     NORMAN FISHER JR.'s cause of death was identified as "septic shock," "Klebsiella bacteremia," "pneumonia," and "non-traumatic acute kidney failure."

## POLICY / CUSTOM ALLEGATIONS

74.     Defendant JIM COOPER, in his capacity as Sheriff, is and was a final policymaking official for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, including as it relates to the maintenance and operation of jail and detention facilities; training, supervision, and discipline of staff acting under his command; and the safekeeping of inmates/prisoners in his custody. *See* Cal. Const. Art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code §

9

4006; Cal. Gov. Code § 26605; Cal. Gov. Code § 26610. Specifically, Defendant JIM COOPER is and was responsible for the provision of medical and mental health care to inmates/prisoners in his custody at Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMEN's jail facilities, including assessment of inmates for medical emergencies, medical needs, and mental health needs, and all policies, procedures, customs, hiring, staffing, supervision, and training related thereto.

75.     Defendant JIM COOPER has served as Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's Sheriff since December 2022.

76.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, including subordinate personnel, Defendants DOE 1 to 20, maintain and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in the following deficiencies:

(a)     failure adequately to observe, monitor, and supervise inmates within the jail;

(b)     failure adequately to staff the jail with necessary officials, staff, and personnel;

(c)     failure adequately to detect and investigate, intervene, and intercede when dangerous and emergency conditions are present inside the jail;

(d)     failure adequately to diagnose, monitor, and treat inmates' necessary and immediate medical needs; and

(e)     failure adequately to summon and provide necessary and immediate medical care for inmates with necessary and immediate medical needs.

77.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, including subordinate personnel, Defendants DOE 1 to 20, were deliberately indifferent to NORMAN FISHER JR.'s safety and health, and knew or should have known that NORMAN FISHER JR. was at risk of harm, based on the following circumstances:

(a)     jail staff, including Defendants DOE 1 to 20, failed adequately to observe, monitor, and supervise inmates within the jail, including NORMAN FISHER JR.;

(b)     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20, failed adequately to staff the jail with

10

1   necessary officials, staff, and personnel, including during NORMAN FISHER JR.'s incarnation;

2          (c)   jail staff, including Defendants DOE 1 to 20, failed adequately to detect and

3   investigate, intervene, and intercede when dangerous and emergency conditions are present inside the

4   jail, including NORMAN FISHER JR.'s medical need;

5          (d)   jail staff, including Defendants DOE 1 to 20, failed adequately to diagnose,

6   monitor, and treat inmates' necessary and immediate medical needs, including NORMAN FISHER JR.'s

7   medical need; and

8          (e)   jail staff, including Defendants DOE 1 to 20, failed adequately to summon and

9   provide necessary and immediate medical care for inmates with necessary and immediate medical needs,

10  including NORMAN FISHER JR.'s medical need.

11         78.   <u>National Standards</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO

12  COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are non-compliant

13  with widely-accepted jail standards, including those set forth by the National Commission on

14  Correctional Health Care's ("NCCHC") "Standards for Health Services in Jails," including related to

15  "Access to Care" (J-A-01).

16         79.   *Mays* Consent Decree: Defendants COUNTY OF SACRAMENTO, SACRAMENTO

17  COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are largely non-

18  compliant with the terms of the court-ordered consent decree issued in *Mays v. County of Sacramento*,

19  U.S. District Court, Eastern District of California, Case No. 2:18-cv-02081-TLN-KJN. Therein, the

20  plaintiffs alleged numerous "dangerous, inhumane and degrading conditions" at Defendants COUNTY

21  OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities. In

22  June 2019, Defendant COUNTY OF SACRAMENTO settled the case and agreed, *inter alia*, to changes

23  to jail staffing, facilities, inmate health services, and custodial practices, including the creation and

24  enforcement of polices and trainings that ensure compliance with Americans with Disabilities Act

25  ("ADA") requirements, and improving the delivery of medical care through timely referrals, responses to

26  requests for care and medication disbursement, chronic care treatment plans, appropriate clinic space,

27  and staff training. (<https://www.saccounty.gov/news/latest-news/Pages/County-Jail-Class-Action-

28  Lawsuit-Agreement-Reached.aspx>; <https://www.disabilityrightsca.org/press-release/settlement-

11

1   approved-in-sacramento-county-jail-class-action-to-ensure-better-treatment>; *see also*

2   <https://www.sacsheriff.com/pages/transparency.php>.) Defendants COUNTY OF SACRAMENTO and

3   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities are subject to reporting

4   requirements and quarterly monitoring reports prepared by court-appointed experts, pursuant to the

5   Consent Decree. (*Mays* ECF No. 149.) Defendants COUNTY OF SACRAMENTO and SACRAMENTO

6   COUNTY SHERIFF'S DEPARTMENT have failed to achieve compliance with the terms of the consent

7   decree, as demonstrated by monitoring reports and the 2022–23 Sacramento County Grand Jury. For

8   example:

9           (a)     The First Monitoring Report of Medical Experts, filed January 20, 2021, found, for

10  75 total consent decree provisions, substantial compliance with 4 provisions (5%), partial compliance

11  with 15 provisions (20%), non-compliance with 39 provisions (52%), and 17 provisions (23%) were not

12  evaluated. (*Mays* ECF No. 136-1.) Specifically, the review's findings were "deeply concerning." (*Id.*)

13  For example, "[t]here are serious and systemic issues resulting in harm to patients, including

14  hospitalizations and death" (*id.* at 7–8), "[t]he sick call system does not provide timely access to care"

15  (*id.* at 8), "[t]here are excessive delays in transporting patient[s] to the hospital" (*id.* at 9), and "[t]here

16  are serious nursing and medical quality of care issues" (*id.* at 9). The report made an "alarming finding []

17  that nurses do not notify physicians when a patient's condition is clearly deteriorating, which has resulted

18  in hospitalizations and deaths" and that, even when physicians are notified, "physicians also minimized

19  patient clinical findings and failed to adequately treat their underlying chronic medical conditions." (*Id.*

20  at 9.) "These cases may reflect a wider cultural issue at the jail in how health care personnel view their

21  obligations to provide timely, appropriate and compassionate care to patients." (*Id.* at 9.)

22          (b)     The Second Monitoring Report of Medical Experts, filed October 4, 2021, found,

23  for 75 total consent decree provisions, substantial compliance with 12 provisions (16%), partial

24  compliance with 19 provisions (25%), non-compliance with 37 provisions (49%), and seven provisions

25  (9%) were not evaluated. (*Mays* ECF No. 149-1 at 13.) Specifically, the "review showed that inmates

26  with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure

27  (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g.

28  chronic care, mortality review)" and that "[c]onsiderable work remains to achieve Consent Decree

compliance." (*Id*. at 12.) For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." (*Id*. at 11–12.) The report found that "there has been custody interference in the provision of health care," including where custody staff has denied inmates necessary medical care and, in at least one case, allowed an inmate to "languish[] to near death before intervention took place." (*Id*. at 9.)

(c)     On March 1, 2022, *Mays* class counsel sent a letter to Defendant COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT describing "ongoing jail overcrowding" and reports that "[p]eople told us that they were treated 'like animals' when they asked the deputies passing by … how they could access the health care services they needed." (*Mays* ECF No. 153-4.)

(d)     The Third Monitoring Report of Medical Experts, filed October 25, 2022, found, for 75 total consent decree provisions, substantial compliance with 13 provisions (17%), partial compliance with 22 provisions (29%), non-compliance with 33 provisions (44%), and seven provisions (9%) were not evaluated. (*Mays* ECF No. 162-1 at 14.) Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g., chronic care, mortality review)" and "[c]onsiderable work remain[ed] to achieve Consent Decree compliance." (*Id*. at 13.) For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." (*Id*. at 10–12.) The "review showed continuing harm to patients as a result of population pressures, lack of medical and mental health beds, health care systems issues, and lapses in care." (*Id*. at 6.) The report found a "practice of providers cutting and pasting notes" which "risks documenting history and physical examinations and education that have not been conducted and, in some cases, simply amounts to falsification of medical records." (*Id*. at 28.)

(e)     The Fourth Monitoring Report of Medical Experts, filed August 15, 2023, found, for 75 total consent decree provisions, substantial compliance with 25 provisions (33%), partial compliance with 25 provisions (33%), and non-compliance with 25 provisions (33%). (*Mays* ECF No. 168-1 at 6.) Specifically, the "review showed persistence of *critical* issues that impact access to—and quality of care that resulted in serious harm to patients, and places the inmate population at risk of harm

if not immediately addressed," including: "Insufficient health care staffing; Insufficient custody staff dedicated to health care delivery; Lack of patient access to care, including custody barriers to care; Lack of evaluation of medical care quality, including mortality reviews; Lack of timely access to specialty services and implementation of recommendations; Failure to deliver ordered care (e.g., cancellation of medication administration); Inadequate evaluation, treatment, and monitoring of patients with substance use disorders; Lack of a Medication Assisted Treatment (MAT) program to induct patients on suboxone or other treatment; [and] Inadequate treatment space and environment of care." (*Id.*) For example, "[t]he County is not providing timely patient access to specialty services, resulting in delayed diagnosis and treatment." (*Id.* at 11–12.) A "detailed case reviews show[ed] multiple lapses in care in many records." (*Id.* at 13 n.21.) The report found that medical "[p]roviders conducted inadequate medical evaluations and treatment leading to deterioration of the patient," including by falsifying medical records and "copy[ing] and past[ing] *previous* examinations into the progress note, *without amending the note to reflect the actual condition of the patient.*" (*Id.* at 22.)

80.     Inadequate Medical Diagnosis, Monitoring, and Care: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a policy or custom whereby jail staff inadequately diagnose, monitor, and provide care for inmates, including failure to respond to immediate medical needs. For example:

(a)     The *Mays* Consent Decree Monitoring Reports of the Medical Experts describe and document persistent and numerous incidents and case reviews where jail staff, including both custody staff and medical staff, failed timely to observe and respond to inmates' immediate medical needs. (*Mays* ECF No. 136-1; *Mays* ECF No. 149-1; *Mays* ECF No. 162-1; *Mays* ECF No. 168-1.) Each of these monitoring reports, including any subsequently-issued monitoring reports, and the incidents described therein, are expressly incorporated herein.

(b)     On July 8, 2023, 43-year-old Michael Prince died at the Sacramento County Jail. On July 2, 2023, the inmate was admitted to the jail with a with a medical history including serious mental illness; noncompliance with medications; neuropathy, peripheral due to diabetes; diabetes mellitus, type 2; elevated blood pressure reading without diagnosis of hypertension; diabetic peripheral neuropathy; body aches; alcohol use disorder; anxiety state, unspecified; bipolar disorder; FOSS III;

14

tested positive for COVID-19; heroin abuse; alcohol abuse; and benzodiazepine withdrawal. From July 2, 2023, to July 8, 2023, jail staff failed adequately to house, monitor, and respond to the inmate's obvious and deteriorating medical condition. On July 8, 2023, the inmate was found dead in his cell. The *Mays* Medical Expert monitors found: "[R]ecord review showed that for one patient housed on the detox unit, nurses did not conduct any withdrawal monitoring during the six days prior to his death."; and "On 7/2/2023, a patient was admitted to the detox unit with alcohol and opioid substance use disorder but nurses did not monitor the patient for the six days the patient was in the unit. The patient died on the morning of 7/8/2023." (*Mays* ECF No. 168-1 at 15.)

(c)     On July 24, 2022, a 67-year-old inmate (Patient #35) died of sepsis at the Sacramento County Jail. On July 12, 2022, the inmate was admitted to the jail with a medical history including opioid substance use disorder, untreated intestinal cancer, 60 lbs. weight loss, and back surgery. On July 13, 2022, the inmate submitted a health request that he had sepsis and a heart infection but medical staff did not timely address the health request. On July 15, 2022, a medical provider saw the inmate who reported weight loss, intestinal cancer, inability to tolerate solid foods without vomiting, and rectal bleeding—symptoms which warranted immediate admission to the hospital for medical evaluation. The medical provider ordered labs and follow-up in one month, treating the inmate's condition as routine. The inmate died. On August 22, 2022, the Medical Director completed a preliminary mortality review which did not identify lapses in care. The *Mays* Medical Expert monitors found: "The Medical Director's failure to recognize, acknowledge and address serious lapses in medical care quality is likely not to result in improvement in medical care quality for patient[s] in custody." (*Mays* ECF No. 168-1 at 138–139; *Mays* ECF No. 162-1 at 79–84.)

(d)     On February 15, 2022, inmate Anthony Galley suffered a seizure caused by severe alcohol withdrawal and died at the Sacramento County Main Jail. On February 13, 2022, Galley was admitted into the jail while intoxicated with a medical history of alcohol use disorder and addiction. Jail staff failed to utilize or implement necessary alcohol detoxification protocols, confined Galley to a holding cell without adequate monitoring, and ignored him until he was found unresponsive and died. (*Mays* ECF No. 153-4; *Mays* ECF No. 162-1 at 76.) A civil rights lawsuit was filed. (*Galley v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:23-cv-00325-WBS-AC.) The

15

case remains pending.

(e)     On July 24, 2021, inmate Timothy Noble died while withdrawing from opiates at the Sacramento County Main Jail. Days earlier, Noble was booked into the jail and began receiving treatment for opiate withdrawal. Jail staff did not provide Noble with special housing or monitoring. Noble's cellmate observed—but jail staff failed to recognize—that Noble did not eat or drink for two days prior to his death. (SCSD Report No. 2021-224861; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Noble-2021-.pdf>.)

(f)     On August 4, 2020, inmate Travis Welde overdosed at the Sacramento County Main Jail, and died of "hemopericardium due to a ruptured acute myocardial infarction resulting from mixed drug intoxication." Days earlier, Welde was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." But Welde's urine drug screening test was positive for amphetamines, methamphetamines, THC, MDMA, and opiates. Welde was "engaging in erratic behavior, such as kicking his door and talking nonsensically," and, on August 2, 2020, was transferred to the mental health housing unit. Welde's condition continued to deteriorate, including "smear[ing] feces on himself and his cell walls," "talking to himself" and "yelling unintelligibly," "sweating" or appearing "wet," "flail[ing] his arms," and "sit[ting] and stand[ing] back up repeatedly." On August 3, 2020, Welde told staff that he was "detoxing." But jail staff ignored the threat that Welde was detoxing because "nursing staff believed Welde was outside the time period for detoxing from drug use due to the length of time Welde had been in the jail." Later, the jail's mental health staff concluded that Welde was "gravely disabled" and he was "placed him on the waiting list for a higher level of mental health care." On August 4, 2020, Welde was "standing naked at the cell door," "breathing heavily," and "bouncing back and forth on the balls of his feet." Jail staff asked Welde if he was okay and, in response, Welde "grunted and shook his head." But jail staff continued to ignore him. An hour later, Welde was found lying "face down and naked" on the floor. Jail staff continued to ignore him. Later, jail staff entered the cell and determined that Welde was not breathing and had no pulse. (SCSD Report No. 2020-248721; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Review-Welde-.pdf>.)

(g)     On July 19, 2019, inmate Nicholas Overbey was found dead inside of his cell at

16

the Sacramento County Main Jail. Overbey was assigned to the jail's special housing but was ignored and unmonitored by jail staff. Overbey's cellmate pressed the emergency call button located inside of the cell and informed jail staff that Overbey was not breathing. Jail staff responded and found Overbey lying on his back foaming at the mouth. Jail staff rubbed Overbey's sternum causing blood and other fluids to expel from his nose and mouth. Overbey's cellmate reported that he "had not been moving for at least a day." (SCSD Report No. 2019-255337; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Overbey.pdf>.)

(h)     On June 11, 2019, inmate Andrew Armstead overdosed at the Sacramento County Main Jail, and died of "methamphetamine intoxication." Armstead was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." A day after booking, Armstead was summoned for a classification interview but failed to appear. Later, jail staff observed Armstead inside of his cell and non-responsive on a bunk. Later, Armstead's cellmate pressed the emergency intercom button inside the cell and reported that Armstead was non-responsive. Later, jail staff responded to the cell and observed that Armstead had no pulse. Armstead's blood was found to contain amphetamine and methamphetamine. (SCSD Report No. 2019-204534; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Armstead.pdf>.)

81.     <u>Failure to Report In-Custody Deaths</u>: Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT sometimes fail to report the deaths of persons who sustain critical injuries while in-custody at jail facilities but later die outside of jail facilities. For example, on June 16, 2017, inmate Clifton Harris was beaten into a coma by his cellmate in the Sacramento County Main Jail. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT "released" Harris from custody while he was comatose but before he died eight months later as a result of the injuries he sustained in-custody. Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT did not report Harris' death as an in-custody death. (<u>Sacramento News & Review</u>, *The Dungeon Master* (Sep. 22, 2020), available at: <https://sacramento.newsreview.com/2020/09/22/the-dungeon-master/>; <u>Sacramento Bee</u>, *Sacramento CA sheriff won't tell public about jail deaths* (Aug. 17, 2021), available at: <https://www.sacbee.com/news/local/article253422244.html>.)

82.   <u>Delayed Investigations & Inadequate Re-Training</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a deficient policy and custom of unreasonable delays in investigating in-custody incidents, injuries, and deaths occurring at jail facilities, including personnel's potential misconduct and policy violations and the need for new or different policies and procedures to prevent future harm. Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT were obligated but failed timely to create and implement policies related to "Review of Custody Death," pursuant to the *Mays* Consent Decree. For example:

(a)   The Report on Suicide Prevention Practices Within the Sacramento County Jail System, filed July 31, 2018, found that "the Sacramento County Jail System does *not* currently engage in a viable mortality review process…" (*Mays* ECF No. 1-4 at 57.)

(b)   The First Monitoring Report of Medical Experts, filed January 20, 2021, found "noncompliance." (*Mays* ECF No. 136-1 at 50–52.) The First Monitoring Report of Suicide Prevention Practices, filed January 20, 2021, found: "This provision is in Non-Compliance." (*Mays* ECF No. 136-3 at 76–77.)

(c)   The Second Monitoring Report of Medical Experts, filed October 4, 2021, found that "[t]he Mortality Review process fails to identify problems with health care systems and quality of care," for example, "[n]one of the reviews assessed the appropriateness of the care provided, the effectiveness of relevant policies and procedures, or identified opportunities for improvement in the delivery of care in order to prevent future deaths" and "[t]here were no corrective action plans developed for any of the deaths, which seems largely due to the failure to recognize that one was needed." (*Mays* ECF No. 149-1 at 64.)

(d)   The Third Monitoring Report of Medical Experts, filed October 25, 2022, found that "[t]he Mortality Review process fails to identify problems with health care systems and quality of care," for example, that "reviews still lack identification and analysis of lapses in care, systemic issues, and opportunities for improvement" and that, "*in several cases, significant lapses in care and system issues were unrecognized, glossed over, or ignored all together.*" (*Mays* ECF No. 162-1 at 13.)

(e)   The Fourth Monitoring Report of Medical Experts, filed August 15, 2023, found

18

"[l]ack of evaluation of medical care quality, including mortality reviews." (*Mays* ECF No. 168-1 at 6.) Specifically, "[i]n the over 3 years since the Consent Decree has been in effect, the County has not developed and implemented any system for evaluation of medical care quality to ensure that it meets contemporary standards of medical care." (*Id*. at 13.) For example, "*identification and evaluation of medical care quality is virtually absent, even in mortality records that show multiple lapses in care*" and "[c]orrective action plans are exclusively devoted to system and nursing issues, not medical care quality issues." (*Id*. at 13.) "This has been a persistent issue throughout monitoring resulting in adverse patient outcomes." (*Id*. at 13–14.)

83. <u>Media Reporting on Jail Conditions</u>: Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's deficient policies and customs are documented in numerous media accounts and reporting. For example:

(a) <u>The Sacramento Bee</u>, *Sacramento Sheriff Jim Cooper is mismanaging the jail and impairing care for inmates* (Oct. 20, 2023), available at: <https://www.sacbee.com/opinion/op-ed/article280720760.html> ("There are pervasive, well-documented examples of sheriff staff postponing specialty care, overriding physician orders, cutting corners on required medical screenings, ignoring medical evaluation requests, neglecting psychiatrically ill patients and skipping entire days of medication distributions. This undermining of medical professionals and obstruction of constitutionally-mandated medical care should never occur, and yet it has become routine in Sacramento County jails.").

(b) <u>CapRadio</u>, *Grand jury calls for Sacramento County jail improvements, warns of receivership risk* (June 5, 2023), available at: <https://www.capradio.org/articles/2023/06/05/grand-jury-calls-for-sacramento-county-jail-improvements-warns-of-receivership-risk/> ("Sacramento County risks losing control of its two jails to a court-appointed receiver if it doesn't improve detention conditions, a grand jury warned in a report…").

(c) <u>The Sacramento Bee</u>, *Sacramento Main Jail Allows Inmates to Suffer During COVID* (Nov. 9, 2021), available at: <https://www.sacbee.com/opinion/op-ed/article255652546.html> ("Sacramento is on track to have the deadliest jail per capita in California.").

(d) <u>Sacramento News & Review</u>, *The Dungeon Master* (Sep. 22, 2020), available at: <https://sacramento.newsreview.com/2020/09/22/the-dungeon-master/> ("Sacramento County had the

third most jail deaths in the state last year," despite "Sacramento County ha[ving] a smaller population than [] seven [other] counties"; County jail facilities have "lost more than 40 people in his jails over the past decade, according to state justice data and news accounts…").

    (e) *Marshall v. Superior Court*, No. S263043, 2020 Cal. LEXIS 4730, at *10 (Cal. July 15, 2020) (Liu, J., dissenting) ("Based on the allegations contained in the 54 inmate declarations before us, petitioners have made a prima facie case that the Sacramento County Sheriff is acting with deliberate indifference to the health and safety of the inmates in violation of the Eighth Amendment to the federal Constitution. The declarations paint a grim picture of the inmates' conditions of confinement." (internal citations omitted).)

   84. <u>Records Destruction Policies/Failure to Retain Records</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain an official written policy, also known as a "General Order," concerning "Destruction of Records" and "Complaints and Disciplinary Policies and Procedures." The records-destruction policy expressly provides: "Records of complaints, investigations and dispositions shall be retained by Internal Affairs for a period of at least five and one half years." Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER actively employ the records-destruction policies to destroy records as soon as permitted by policy, including records documenting inmate deaths and internal affairs records. For example, as of January 2022, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT failed to retain records concerning in-custody deaths at jail facilities older than 2017. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's records-destruction policies and practices obfuscate histories of indifference and misconduct, especially when combined with failures to report/investigative delays relating to in-custody incidents.

   85. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER do not meaningfully discipline, re-train, correct, or otherwise penalize jail staff involved in critical incidents where preventable deaths and injuries are sustained by inmates, including those described above. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's routine failure to hold jail staff

accountable has created and encouraged an environment where jail staff believe they can "get away with anything."

86.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of NORMAN FISHER JR.

87.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's inadequate policies, customs, training, supervision, and control of personnel and inmates was a moving force behind and contributed to the death of NORMAN FISHER JR.

## FIRST CLAIM

### Deliberate Indifference / Special Relationship

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

88.     Plaintiff ESTATE OF NORMAN FISHER JR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

89.     The allegations of the preceding paragraphs 1 to 87 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

90.     Defendants SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20 inadequately supervised, monitored, and responded to NORMAN FISHER JR., putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of the Fourteenth Amendment to the U.S. Constitution.

91.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. maintained policies or customs of action and inaction resulting in harm to NORMAN FISHER JR., in violation of the Fourteenth Amendment to the U.S. Constitution.

92.     Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

93.     NORMAN FISHER JR. was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF NORMAN FISHER JR. to receive compensatory/survival and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF NORMAN FISHER JR. prays for relief as hereunder appears.

\ \ \

\ \ \

## SECOND CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

94.     Plaintiffs S.F. and CATHERINE DALLAS FISHER assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

95.     The allegations of the preceding paragraphs 1 to 87 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

96.     Plaintiffs S.F. and CATHERINE DALLAS FISHER shared a close relationship and special bond with NORMAN FISHER JR., which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving relationship, prior to his death.

97.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs S.F. and CATHERINE DALLAS FISHER's familial association with NORMAN FISHER JR., in the violation of the Fourteenth Amendment to the U.S. Constitution.

98.     Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

99.     Plaintiffs S.F. and CATHERINE DALLAS FISHER were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

23

STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA

HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR

FADAKI, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory/wrongful

death and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO

COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC.

dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX,

NILOOFAR FADAKI, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER,

MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK,

DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

WHEREFORE, Plaintiffs S.F. and CATHERINE DALLAS FISHER pray for relief as hereunder

appears.

## THIRD CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. I; 42 U.S.C. § 1983)

100.    Plaintiffs S.F. and CATHERINE DALLAS FISHER assert this Claim against Defendants

COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka

MAXIM HEALTHCARE STAFFING SERVICES, INC., and DOE 1 to 20.

101.    The allegations of the preceding paragraphs 1 to 87 are realleged and incorporated, to the

extent relevant and as if fully set forth in this Claim.

102.    Plaintiffs S.F. and CATHERINE DALLAS FISHER shared a close relationship and

special bond with NORMAN FISHER JR., which included deep attachments, commitments, and

distinctively personal aspects of their lives and was typical of a loving relationship, prior to his death.

103.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS,

SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and

DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs S.F. and

CATHERINE DALLAS FISHER's familial association with NORMAN FISHER JR., in the violation of

the First Amendment to the U.S. Constitution.

104.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA

HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR

FADAKI, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved

reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

105.    Plaintiffs S.F. and CATHERINE DALLAS FISHER were injured as a direct and

proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA

HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR

FADAKI, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory/wrongful

death and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO

COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC.

dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX,

NILOOFAR FADAKI, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER,

MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK,

DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

WHEREFORE, Plaintiffs S.F. and CATHERINE DALLAS FISHER pray for relief as hereunder

appears.

\ \ \

\ \ \

\ \ \

## FOURTH CLAIM

### Failure to Summon Medical Care

### (Cal. Gov. Code § 845.6)

106.    Plaintiff ESTATE OF NORMAN FISHER JR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

107.    The allegations of the preceding paragraphs 1 to 87 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

108.    Defendants SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20 knew or had reason to know that NORMAN FISHER JR. was in need of immediate medical care and failed to take reasonable action to summon medical care, in violation of California Government Code § 845.6.

109.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. maintained policies or customs of action and inaction resulting in harm to NORMAN FISHER JR., in violation of California Government Code § 845.6.

110.    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

111.    Defendants JIM COOPER, SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

26

1    112.    NORMAN FISHER JR. was injured as a direct and proximate result of Defendants

2  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

3  COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka

4  MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK,

5  DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20's actions

6  and inactions, entitling Plaintiff ESTATE OF NORMAN FISHER JR. to receive compensatory/survival

7  and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

8  SHERIFF'S DEPARTMENT, JIM COOPER, SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA

9  ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20; and punitive damages

10  against Defendants JIM COOPER, SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO,

11  JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

12    WHEREFORE, Plaintiff ESTATE OF NORMAN FISHER JR. prays for relief as hereunder

13  appears.

14                        **FIFTH CLAIM**

15                  **Tom Bane Civil Rights Act**

16                  **(Cal. Civ. Code § 52.1)**

17    113.    Plaintiffs ESTATE OF NORMAN FISHER JR. (pursuant to California Code of Civil

18  Procedure § 377.30), S.F., and CATHERINE DALLAS FISHER assert this Claim against Defendants

19  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

20  COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka

21  MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK,

22  DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

23    114.    The allegations of the preceding paragraphs 1 to 112 are realleged and incorporated, to the

24  extent relevant and as if fully set forth in this Claim.

25                  Deliberate Indifference / Special Relationship

26    115.    Defendants SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO,

27  JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20 inadequately supervised, monitored,

28  and responded to NORMAN FISHER JR., putting him at substantial risk of suffering serious harm,

27

without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, with deliberate indifference or reckless disregard of rights protected by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 7(a) of the California Constitution.

116.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. maintained policies or customs of action and inaction resulting in harm to NORMAN FISHER JR., with deliberate indifference or reckless disregard of rights protected by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 7(a) of the California Constitution.

Unwarranted Interference with Familial Association

117.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs S.F. and CATHERINE DALLAS FISHER's familial association with NORMAN FISHER JR., with deliberate indifference or reckless disregard of rights protected by the First and Fourteenth Amendments to the U.S. Constitution; and Article I, Section 7(a) of the California Constitution.

Failure to Summon Medical Care

118.    Defendants SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20 knew or had reason to know that NORMAN FISHER JR. was in need of immediate medical care and failed to take reasonable action to summon medical care, with deliberate indifference or reckless disregard of rights protected by California Government Code § 845.6.

119.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. maintained

28

1  policies or customs of action and inaction resulting in harm to NORMAN FISHER JR., with deliberate

2  indifference or reckless disregard of rights protected by California Government Code § 845.6.

3  <u>Failure to Staff and Monitor</u>

4      120.    Defendants DOE 1 to 20 failed to conduct visual safety checks and remain accessible to

5  NORMAN FISHER JR., with deliberate indifference or reckless disregard of rights protected by

6  California Code of Regulations, tit. 15 § 1027 *et seq.*

7      121.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

8  DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

9  STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. maintained

10  policies or customs of action and inaction resulting in harm to NORMAN FISHER JR., with deliberate

11  indifference or reckless disregard of rights protected by California Code of Regulations, tit. 15 § 1027 *et*

12  *seq*.

13  (Allegations Common to All Theories)

14      122.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

15  DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

16  SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. are vicariously liable,

17  through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a),

18  845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of

19  employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba

20  MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

21  SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX,

22  NILOOFAR FADAKI, and DOE 1 to 20.

23      123.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

24  STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA

25  HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR

26  FADAKI, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting

27  in great harm.

28      124.    NORMAN FISHER JR. and Plaintiffs S.F. and CATHERINE DALLAS FISHER were

injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20's actions and inactions, entitling Plaintiffs ESTATE OF NORMAN FISHER JR., S.F., and CATHERINE DALLAS FISHER to receive compensatory/survival and treble damages and civil/statutory penalties against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

WHEREFORE, Plaintiffs ESTATE OF NORMAN FISHER JR., S.F., and CATHERINE DALLAS FISHER pray for relief as hereunder appears.

## SIXTH CLAIM

### Intentional Infliction of Emotional Distress

125.    Plaintiff ESTATE OF NORMAN FISHER JR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

126.    The allegations of the preceding paragraphs 1 to 87 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

127.    Defendants SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20 engaged in outrageous conduct, including by inadequately supervising, monitoring, diagnosing, and responding to NORMAN FISHER

30

JR. in violation of the Fourteenth Amendment to the U.S. Constitution; Article I, Section 7(a) of the California Constitution; California Government Code § 845.6; and California Code of Regulations, tit. 15 § 1027 *et seq.*, with intent or reckless disregard of the probability that NORMAN FISHER JR. would suffer emotional distress and he did suffer severe emotional distress.

128.    Defendants JIM COOPER and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. engaged in outrageous conduct, including maintaining policies or customs of action and inaction which resulted in harm to NORMAN FISHER JR. in violation of the Fourteenth Amendment to the U.S. Constitution; Article I, Section 7(a) of the California Constitution; California Government Code § 845.6; and California Code of Regulations, tit. 15 § 1027 *et seq.*, with intent or reckless disregard of the probability that NORMAN FISHER JR. would suffer emotional distress and he did suffer severe emotional distress.

129.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

130.    NORMAN FISHER JR. was injured as a direct and proximate result of Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF NORMAN FISHER JR. to receive compensatory/survival and punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF NORMAN FISHER JR. prays for relief as hereunder appears.

\ \ \

## SEVENTH CLAIM

### Negligence

131.   Plaintiff ESTATE OF NORMAN FISHER JR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

132.   The allegations of the preceding paragraphs 1 to 130 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

133.   Defendants SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20 owed a duty of care to NORMAN FISHER JR. and breached a duty, including by inadequately supervising, monitoring, diagnosing, and responding to NORMAN FISHER JR. in violation of the Fourteenth Amendment to the U.S. Constitution; Article I, Section 7(a) of the California Constitution; California Government Code § 845.6; and California Code of Regulations, tit. 15 § 1027 *et seq*.

134.   Defendants JIM COOPER and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. owed a duty of care to NORMAN FISHER JR., including a special relationship with NORMAN FISHER JR., as a jailer, and/or Defendants SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20, as an employer, and breached that duty, including by maintaining policies or customs of action and inaction which resulted in harm to NORMAN FISHER JR. in violation of the Fourteenth Amendment to the U.S. Constitution; Article I, Section 7(a) of the California Constitution; California Government Code § 845.6; and California Code of Regulations, tit. 15 § 1027 *et seq*.

135.   Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. owed a duty of care and

1  breached that duty, including by maintaining policies or customs of action and inaction which resulted in

2  harm to NORMAN FISHER JR. in violation of the California Government Code § 845.6 and California

3  Code of Regulations, tit. 15 § 1027 *et seq.*

4        136.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

5  DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

6  SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. are vicariously liable,

7  through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a),

8  845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of

9  employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba

10  MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

11  SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX,

12  NILOOFAR FADAKI, and DOE 1 to 20.

13        137.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

14  STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA

15  HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR

16  FADAKI, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting

17  in great harm.

18        138.    NORMAN FISHER JR. was injured as a direct and proximate result of Defendants

19  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

20  COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka

21  MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK,

22  DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20's actions

23  and inactions, entitling Plaintiff ESTATE OF NORMAN FISHER JR. to receive compensatory/survival

24  damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

25  DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

26  SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS,

27  SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and

28  DOE 1 to 20; and punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE

1  SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING

2  SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE

3  CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

4        WHEREFORE, Plaintiff ESTATE OF NORMAN FISHER JR. prays for relief as hereunder

5  appears.

6  ### EIGHTH CLAIM

7  **Wrongful Death**

8  **(Cal. Code Civ. Proc. § 377.60)**

9       139.    Plaintiff S.F. asserts this Claim against Defendants COUNTY OF SACRAMENTO,

10  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE

11  SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING

12  SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE

13  CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

14       140.    The allegations of the preceding paragraphs 1 to 138 are realleged and incorporated, to the

15  extent relevant and as if fully set forth in this Claim.

16       141.    Defendants SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO,

17  JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20 caused NORMAN FISHER JR.'s

18  death by wrongful act and neglect, including by negligently and inadequately supervising, monitoring,

19  diagnosing, and responding to NORMAN FISHER JR. in violation of the Fourteenth Amendment to the

20  U.S. Constitution; Article I, Section 7(a) of the California Constitution; California Government Code §

21  845.6; and California Code of Regulations, tit. 15 § 1027 *et seq.*

22       142.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

23  DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

24  STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. caused

25  NORMAN FISHER JR.'s death by wrongful act and neglect, including by negligently maintaining

26  policies or customs of action and inaction which resulted in harm to NORMAN FISHER JR. in violation

27  of the Fourteenth Amendment to the U.S. Constitution; Article I, Section 7(a) of the California

28  Constitution; California Government Code § 845.6; and California Code of Regulations, tit. 15 § 1027 *et*

34

*seq.*

143.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

144.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

145.    NORMAN FISHER JR. died as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20's actions and inactions, entitling Plaintiff S.F. to receive compensatory/wrongful death damages and expenses against Defendants COUNTY MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE

35

CASTEX, NILOOFAR FADAKI, and DOE 1 to 20.

WHEREFORE, Plaintiff S.F. prays for relief as hereunder appears.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ESTATE OF NORMAN FISHER JR., S.F., and CATHERINE DALLAS FISHER seek Judgment as follows:

1.      For an award of compensatory, general, special, and nominal damages (including survival damages and wrongful death damages under federal and state law) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20, in excess of $10,000,000, according to proof at trial;

2.      For an award of exemplary/punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done; and/or constituted oppression, fraud, or malice resulting in great harm;

3.      For funeral and/or burial expenses;

4.      For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., SHALETHA HARRIS, SUVAG PATNAIK, DEOJANNA ORNIDO, JACQUELINE CASTEX, NILOOFAR FADAKI, and DOE 1 to 20, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants COUNTY

36

OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, pursuant to California Civil Code § 818);

5.      For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, and any other statute as may be applicable;

6.      For interest; and

7.      For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: January 8, 2024                                          Respectfully Submitted,

By: _____
        Mark E. Merin
        Paul H. Masuhara
        LAW OFFICE OF MARK E. MERIN
        1010 F Street, Suite 300
        Sacramento, California 95814
        Telephone: (916) 443-6911
        Facsimile: (916) 447-8336

        Attorneys for Plaintiffs
        ESTATE OF NORMAN FISHER JR.,
        S.F., and CATHERINE DALLAS FISHER

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Fisher v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

1

## JURY TRIAL DEMAND

2      A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF NORMAN FISHER JR.,

3  S.F., and CATHERINE DALLAS FISHER.

4  Dated: January 8, 2024                   Respectfully Submitted,

By: _____

      Mark E. Merin
      Paul H. Masuhara
      LAW OFFICE OF MARK E. MERIN
      1010 F Street, Suite 300
      Sacramento, California 95814
      Telephone: (916) 443-6911
      Facsimile: (916) 447-8336

      Attorneys for Plaintiffs
      ESTATE OF NORMAN FISHER JR.,
      S.F., and CATHERINE DALLAS FISHER